SAMUEL ADAMSKY *vs.* CITY COUNCIL OF NEW BEDFORD.

Bristol. October 23, 1950. — February 1, 1951.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*License. Gasoline. Petroleum. Real Property,* License. *Certiorari. Practice, Civil,* Appeal.

An appeal does not lie to this court under G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4, from an order for judgment in a certiorari proceeding.

An order for judgment in a certiorari proceeding heard solely on the petition and the return was an "order decisive of the case founded upon matter of law apparent on the record," from which an appeal lay to this court under G. L. (Ter. Ed.) c. 231, § 96.

One to whom land was conveyed in 1947 also acquired as an incident of his ownership of the land an exercised and unrevoked license issued in 1926 for the storage of gasoline and oil thereon.

Failure for several years of the holder of an exercised license for the storage of gasoline and oil on certain premises to file the certificate of registration required by G. L. (Ter. Ed.) c. 148, § 13, as appearing in St. 1936, c. 394, § 1, and as amended, was adequate "cause" for revocation of the license as against another person who, after such failure, had become owner of the premises and had acquired the license as an incident of his ownership.

PETITION, filed in the Superior Court on April 18, 1949.

The case was heard by *Brogna, J.*

*K. Shapira,* for the petitioner, submitted a brief.

*G. L. O'Malley,* Assistant City Solicitor, for the respondents.

SPALDING, J. This petition for a writ of certiorari is brought to quash the proceedings of the city council of New Bedford revoking the petitioner's license for the keeping and storage of gasoline and oil on certain premises owned by him. The return includes a transcript of what purports to be all the evidence introduced at the hearing on the revocation. G. L. (Ter. Ed.) c. 249, § 4, as amended by St. 1943, c. 374, § 1. Rule 117 of the Superior Court (1945).

The judge ordered the petition dismissed and the petitioner appealed from this order.

Since the appeal is from an order for judgment it is not here under the form of appeal provided by G. L. (Ter. Ed.) c. 213, § 1D, inserted by St. 1943, c. 374, § 4. "That section provides for an appeal from a 'final judgment,' with substantially the effect of an appeal from a final decree in equity, but it makes no provision for an appeal from an order for judgment." *Needham* v. *County Commissioners of Norfolk*, 324 Mass. 293, 295. But the case is properly here under G. L. (Ter. Ed.) c. 231, § 96, as an appeal from an "order decisive of the case founded upon matter of law apparent on the record." *Clement* v. *Selectmen of Westwood*, 316 Mass. 481. Compare *Needham* v. *County Commissioners of Norfolk*, 324 Mass. 293, 295. On this point the present case is distinguishable from the case last cited. There the case was not heard solely on the petition and return; there was also oral evidence. Here it appears that the case was heard only on the petition and the return. In these circumstances the appeal was from an "order decisive of the case founded upon matter of law apparent on the record."

The scope of the present inquiry is to determine whether there is substantial error of law apparent on the face of the respondents' return. *Real Properties, Inc.* v. *Board of Appeal of Boston*, 319 Mass. 180, 181.

The return includes the following: The property in question consists of an eleven car garage. In 1926 the petitioner's predecessor in title was granted a license for the storage of gasoline and oil under the provisions of G. L. c. 148, § 14, the predecessor of G. L. (Ter. Ed.) c. 148, § 13. Annual certificates of registration required by the present § 13 were filed down to and including April 27, 1943, the last certificate being filed by one Grenier who then owned or occupied the property. From 1943 through 1947 no registration certificate was filed. On December 20, 1947, the premises were conveyed to the petitioner. On April 2, 1948, the petitioner tendered to the city clerk a certificate

of registration in the proper form, together with the appropriate fee, but the clerk refused to receive them. The certificate was then thrown on the clerk's desk and the clerk, supposedly because the "council had revoked the license" or because he had been advised by the city's fire inspector that the premises "did not meet fire regulations," mailed the certificate back to the petitioner's attorney.[1]

On July 23, 1948, the city clerk on behalf of the respondents notified the petitioner in writing that on August 3 at a specified time and place they would hold a hearing to determine whether the petitioner's license should be revoked for the following reasons: "1. Annual certificates of registration as required by law have not been filed since 1943. 2. The use of the property for storage of petroleum and/or petroleum products has been abandoned. 3. The premises do not meet requirements of the fire laws and regulations." After a hearing the respondents voted to revoke the petitioner's license on the first two grounds. It appears in the return, and it is not disputed, that the respondents are the local licensing authority under G. L. (Ter. Ed.) c. 148 and have the authority to grant and revoke licenses to keep and store gasoline and oil.

The license in question was not a mere personal privilege. Having been exercised it ripened into a grant which was attached to and ran with the land. Accordingly when the petitioner became the owner of the land he also acquired the license as an incident of such ownership. *Saxe* v. *Street Commissioners of Boston*, 307 Mass. 495, 498. Since the license was granted prior to July 1, 1936, it remained in force "unless and until revoked as hereinafter provided." G. L. (Ter. Ed.) c. 148, § 13, as appearing in St. 1936, c. 394, § 1. Compare *Boston* v. *White Fuel Corp.* 294 Mass. 258, construing § 13 prior to the 1936 amendment. Elsewhere

---

[1] It appears that on January 12, 1948, the petitioner "applied" for the license and at a hearing held on January 22, 1948, the "application" was denied by the respondents, and at the same time they also voted to revoke the license for a reason which is not clear. The action taken on January 22, however, need not concern us because the respondents admit that those proceedings were not in conformity with law.

in § 13 it is provided that licenses of the sort here involved "may be revoked for cause, after notice and a hearing given to . . . [the] owner or occupant" of the property.

It remains to consider whether the respondents committed an error of law in revoking the license. We are of opinion that they did not. Under § 13 the owner or occupant of the land licensed as therein provided "shall annually, on or before April thirtieth, file with the clerk of the city . . . where such license is to be or has been exercised . . . a certificate of registration setting forth the name and address of the holder of such license," with an exception not here material. Penalties for the failure to file such a certificate are provided for in § 16, as amended.

As stated above, the return shows, and it is not disputed, that no certificates were filed for the years 1944, 1945, 1946, and 1947. The failure to file such certificates constituted a sufficient "cause" under § 13 for the revocation of the license. *Fallon* v. *Street Commissioners of Boston,* 309 Mass. 244. In that case the holder of a license similar to that here involved failed to file his certificate on or before April 30, 1940. He tendered the certificate and the proper filing fee to the proper official on May 21 but it was refused. Subsequently after notice and hearing the license was revoked. On exceptions to this court arising out of a petition for certiorari the question for decision was whether the failure to file seasonably the certificate of registration was adequate cause for the revocation of the license under § 13, and it was held that it was. The reasons for so holding are fully set forth in the opinion at pages 246–247 and need not be restated. That decision is controlling here.

We are mindful that in one respect the facts in the *Fallon* case differ from those here. There, since it did not appear that the license had ever been exercised, it was held to be a personal privilege. Here, as we have said above, the license had been exercised and thus became a grant attached to the land. The difference, however, with respect to the issue here involved is not material. Despite the fact that the petitioner's license had become attached to the land, the

owner or occupant of the land was still under a duty to file annually the certificate of registration required by § 13. We see no reason why in such a case the failure to file a certificate should not likewise be adequate cause for revocation. True, in the case at bar it was not the petitioner who failed to file the certificates. That occurred while the property was owned by his predecessors. But this cannot avail the petitioner. While he acquired the license as an incident to his ownership of the land, he took it with any infirmities that may have attached to it under prior ownership. If a prior owner or occupant had conducted himself in such a way with respect to the license as to afford grounds for its revocation, the transfer to the. petitioner did not clothe it with immunity. Accordingly the respondents had a right to consider the fact that no certificate had been filed for four years prior to 1948 and to treat that as a ground for revoking the license.

Since we are of opinion that the license was properly revoked for the cause discussed above, we need not consider whether the revocation could also be supported on the other ground mentioned in the decision of the board, namely, "abandonment of use of premises."

*Order dismissing petition affirmed.*