NEW ENGLAND LNG CO., INC. *vs.* CITY OF FALL RIVER & another.

Suffolk.   May 7, 1975. — June 27, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, & KAPLAN, JJ.

*Gas. Public Utilities. Zoning,* Public service corporation. *Municipal Corporations,* "Home rule," By-laws and ordinances. *Statute,* Construction. *Constitutional Law,* "Home Rule Amendment."

In the event of a conflict as to the applicability of G. L. c. 164, § 75, authorizing aldermen or selectmen to regulate "all acts and doings" of gas companies affecting "the health, safety, convenience or property" of inhabitants, or of c. 164, § 105A, subsequently enacted and vesting authority to regulate the "storage, transpor-

tation and distribution of gas" and the "pressure" thereof in the Department of Public Utilities, the later statute controls [264-265]; and a gas company which had obtained the department's required approval under § 105A to construct and operate a gas facility in a city was entitled to a building permit notwithstanding an amendment of the city's general ordinances, expressly adopted pursuant to the authority of § 75, which would prohibit construction and operation of the proposed facility [265-266].

An exemption from the operation of a zoning ordinance or by-law granted by the Department of Public Utilities to a public service corporation pursuant to G. L. c. 40A, § 10, may not be nullified by a subsequent amendment to the ordinance or by-law. [266]

A city was not authorized by § 6 of art. 89 of the Amendments to the Massachusetts Constitution to enact an ordinance regulating facilities of gas companies in matters the authority to regulate which had been expressly delegated to the Department of Public Utilities by the General Court by a general law applying alike to all cities and towns. [266-267]

PETITION for a writ of mandamus filed in the Supreme Judicial Court for the county of Suffolk on June 14, 1974.

The case was reserved and reported by *Kaplan, J.*

*Acheson H. Callaghan, Jr. (Reginald H. Howe* with him) for the petitioner.

*Brian R. Corey,* Assistant Corporation Counsel, for the city of Fall River, submitted a brief.

*Michael Sahady,* for the Concerned Citizens of the South End, Inc., amicus curiae, submitted a brief.

QUIRICO, J. This is a petition for a writ of mandamus under G. L. c. 249, § 5, and for declaratory relief under G. L. c. 231A.[1] The respondents are the city of Fall River (city) and its building inspector. The petitioner alleges that it applied to the building inspector for a building permit for a facility to liquefy and store liquefied natural gas (LNG) and propane gas (PG), and that the building inspector denied the application, basing

---

[1] This petition was filed on June 14, 1974. Effective July 1, 1974, the following occurred: (a) General Laws c. 249, § 5, was struck by St. 1973, c. 1114, § 291, and the following was inserted in place thereof: "A civil action to obtain relief formerly available by writ of

his action on a specific section of the city's ordinances. The petitioner asks for a writ of mandamus ordering the inspector to issue the permit, and for a declaration that the particular section of the ordinances is invalid and unenforceable.

The case was originally entered in this court for Suffolk County. Thereafter a single justice reserved and reported the case, without decision, to the full court on the basis of the petition, the respondents' answer, and a statement of agreed facts executed by the parties. We hold that the building inspector is required to issue the permit for the petitioner's proposed gas facility.

This is the third case to reach the full court as the result of the petitioner's plans to construct its gas facility in Fall River. The earlier cases were *Pereira* v. *New England LNG Co. Inc.* 364 Mass. 109, decided September 17, 1973, and *Save the Bay, Inc.* v. *Department of Pub. Util.* 366 Mass. 667, decided January 27, 1975. The location, size, nature, and purpose of the petitioner's proposed gas facility are discussed in considerable detail in the earlier cases. Therefore in this case we merely summarize briefly the history of this case and the facts contained in the statement of agreed facts.

The petitioner proposes to construct its gas facility on a tract of land consisting of 22.17 acres located in Fall

mandamus may be brought in the supreme judicial or superior court." Mass. R. Civ. P. 81 (b), 365 Mass. 841 (1974), became effective and provides: "The following writs are abolished: . . . mandamus . . . .. In any action seeking relief formerly obtainable under any such writ, procedure shall follow these rules"; and (b) General Laws c. 231A, § 6, was struck by St. 1973, c. 1114, § 209, and the following was inserted in place thereof: "In any action heretofore or hereafter brought to obtain a judgment or other consequential relief, whether such judgment or relief is granted or not, the court may make a binding determination as provided in this chapter upon application of any party made in his pleadings." On that date Mass. R. Civ. P. 57, 365 Mass. 826 (1974), also became effective. It provides in part: "The procedure for obtaining a declaratory judgment pursuant to General Laws c. 231A shall be in accordance with these rules."

River and contiguous to Mount Hope Bay. On July 16, 1971, it applied to the Department of Public Utilities (Department) for (a) the exemption, under G. L. c. 40A, § 10, inserted by St. 1954, c. 368, § 2, of its land and proposed gas facility from the operation of the zoning ordinance of the city, and (b) the approval, under G. L. c. 164, § 105A, inserted by St. 1932, c. 119, of the manner in which and the pressures at which gas was to be stored, transported, and distributed in connection with the facility. The Department, after a hearing, granted both of the petitioner's requests on December 15, 1971. That decision resulted in the two cases cited above. In the first case Pereira and other owners of property near the land on which the gas facility was to be built brought a bill for declaratory relief, contending that in addition to the Department's approval of the manner in which and pressures at which the gas was to be stored and handled, the present petitioner was required to procure a municipal license under G. L. c. 148, § 13. In the second case the same Pereira, with other individuals, and also a group of persons associated under the corporate name of "Save the Bay, Inc." challenged the validity of the Department's granting of the exemption from the local zoning ordinance. Both cases were decided in favor of the present petitioner. We note that counsel for Pereira in both of the earlier cases has filed a brief in behalf of the Concerned Citizens of the South End, Inc., as amicus curiae in this case.

The *Pereira* case was decided by this court on September 17, 1973. Before the end of October, 1973, the city amended its general ordinances, as distinguished from its zoning ordinance, by adding thereto a new § 8-118.1 which, if applicable to the petitioner's proposed gas facility, would prohibit its construction and operation at the location previously approved by the Department. Section 8-118.1 expressly states that the city council promulgated the regulations therein pursuant to the

authority granted by G. L. c. 164, § 75,[2] and "in the interest of public safety as it relates to fire and explosion."[3]  This new section is not a part of the city's building code, and it was not adopted in accordance with the procedural requirements of G. L. c. 40A, § 6, governing the amendment of zoning ordinances.

Section 8-118.1, if valid and applicable in this case, would substantially affect the proposed gas facility because (a) the proposed facility will include three above ground storage tanks each having a liquid capacity of 25,200,000 gallons, whereas the ordinance would limit each such tank to a liquid capacity of 500,000 gallons; (b) a wall of one of the proposed tanks will be about 415 feet and another about 430 feet from other property which is zoned for residential use, whereas the ordinance would prohibit any such tank having a capacity of more than 5,000 gallons from being erected within 500 feet of any area zoned for residential use.

On February 21, 1974, the petitioner filed a written application with the building inspector for a permit to build the proposed gas facility.  The facility and location described in the application and plans and exhibits submitted therewith were the same facility and location authorized by the Department by its decision of December 15, 1971. On April 18, 1974, the building inspector notified the petitioner in writing "that your application for a permit does not conform to the City Ordinance of October 23, 1973," and that he was therefore returning the petitioner's check filed with the application.  This action by the in-

[2] General Laws c. 164, § 75, provides:  "The aldermen or selectmen may regulate, restrict and control all acts and doings of a corporation subject to this chapter which may in any manner affect the health, safety, convenience or property of the inhabitants of their towns."

[3] Section 8-118.1 also provides: "Notwithstanding the provisions of any rule, regulation, or law to the contrary, no variance shall be granted to alter the standards set forth hereinbefore relative to the handling, processing, and storage of liquefied natural gas, liquefied propane gas and synthetic natural gas."

spector was apparently taken as the result of advice he had obtained from the city's corporation counsel that the permit should not be issued unless there was compliance with "the Revised Ordinances Sec. 8-118.1," but the inspector's letter did not so state. On April 22, 1974, the petitioner wrote to the inspector asking for clarification or specification of the reasons for the denial of its application. On April 25, 1974, the inspector replied in writing: "[P]lease be informed that permits will be issued whenever your application conforms to the City Ordinance Section 8-118.1," and enclosed a copy of the ordinance in question.

The petitioner's application for the building permit for the gas facility and the plans and exhibits submitted with it complied with all State and local building codes, ordinances, and regulations with the following exceptions: (a) they did not comply with the city's zoning ordinance, from which the Department had exempted the facility by its decision of December 15, 1971;[4] and (b) they did not comply with the new ordinance, § 8-118.1, with respect to the size of the proposed tanks and the proximity of the tanks to other property zoned for residential use. Thus the sole issue presented is whether the building inspector acted lawfully in invoking the provisions of § 8-118.1 of the ordinances in denying the petitioner's application for a building permit. We now consider the several arguments made by the parties on that single issue.

1. General Laws c. 164, § 75, which derives from St. 1855, c. 146, § 3, provides: "The alderman or selectmen may regulate, restrict and control all acts and doings of a corporation subject to this chapter which may in any

---

[4] The Department's allowance of this exemption was the subject of litigation in *Save the Bay, Inc.* v. *Department of Pub. Util.* 366 Mass. 667 (1975). When the building inspector denied the application for the permit involved in the present case, he limited his denial to the claimed noncompliance with § 8-118.1 of the city ordinances. Thus we are not concerned with the zoning ordinance or the Department's allowance of the exemption therefrom.

manner affect the health, safety, convenience or property of the inhabitants of their towns." In adopting § 8-118.1 of its ordinances in October, 1973, the city council expressly declared that it was acting pursuant to the authority granted to it by § 75, quoted above.

General Laws c. 164, § 105A, inserted by St. 1932, c. 119, provides in part: "Authority to regulate and control the storage, transportation and distribution of gas and the pressure under which these operations may respectively be carried on is hereby vested in the department [of public utilities]." In approving the petitioner's proposed gas facility, the Department acted pursuant to the authority granted to it by § 105A.

Thus, for the second time in the history of this same proposed facility, we are faced with an apparent conflict between an earlier statute, couched in rather general language dealing with municipal powers, and a later statute dealing solely and specifically with authority over the storage, transportation, and distribution of gas. In this case the conflicting statutes are §§ 75 and 105A. The earlier conflict arose in the case of *Pereira* v. *New England LNG Co. Inc.*, *supra,* and it involved G. L. c. 148, §§ 9, 13, on the one side and G. L. c. 164, § 105A, on the other. We resolve the conflict here, as we did there, in favor of the supremacy of § 105A, which is both more specific and of more recent date. Our reasoning in resolving the conflict in the *Pereira* case applies equally to the conflict in this case and no useful purpose would be served by repeating it.

2. The petitioner argues that § 8-118.1 of the city's general ordinances attempts to regulate land use in a manner which may be accomplished only by a zoning ordinance, and that since the city concedes that it did not comply with the requirements of G. L. c. 40A, § 6, for the amendment of zoning ordinances, § 8-118.1 is invalid. It is unnecessary to answer this argument because even if § 8-118.1 had been adopted in accordance with the requirements of G. L. c. 40A, § 6, it

could not have any effect on the prior action of the Department in exempting the proposed gas facility from the operation of the city's zoning ordinance. There is nothing in any statute indicating a legislative intent to empower a municipality to nullify the Department's prior exemption of the facility from the zoning ordinance by amending the zoning ordinance.

3. Notwithstanding the fact that the new ordinance, § 8-118.1, expressly declares that it was adopted "pursuant to the authority granted by . . . [G. L. c. 164, § 75]," the city now argues that it had authority to adopt the ordinance by virtue of § 6 of art. 2, as amended by art. 89, of the Amendments to the Massachusetts Constitution (Home Rule Amendment). There is no merit to this argument.

Section 6 of the Home Rule Amendment provides in part: "Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, *which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court by section eight*" (emphasis supplied). Section 8 provides in part: "The general court shall have the power to act in relation to cities and towns, but only by general laws which apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two."

General Laws c. 43B, entitled the "Home Rule Procedures Act," inserted by St. 1966, c. 734, § 1, implements the Home Rule Amendment, and it provides in § 13: "Nothing in this section shall be construed to permit any city or town, by ordinance or by-law, to exercise any power or function which is inconsistent with any general law enacted by the general court before . . . [November 8, 1966] which applies alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two." Section 13 thus repeats the important

limitation on the power delegated to municipalities by the Home Rule Amendment.

The scope and extent of the legislative power delegated to municipalities under the Home Rule Amendment and the Home Rule Procedures Act were the subject of extended discussion in *Bloom* v. *Worcester,* 363 Mass. 136, 147-157 (1973). It is obvious from that discussion, which need not be repeated here, and from what we have held earlier in this opinion that (a) the General Court, by general laws which apply alike to all cities and towns, has expressly delegated to the Department the authority to regulate the gas facilities such as the one involved here as to all of those same matters which the city has attempted to accomplish by § 8-118.1 of its ordinances; (b) the provisions of § 8-118.1 are therefore inconsistent with laws enacted by the General Court in conformity with the powers reserved to it by § 8 of the Home Rule Amendment; and (c) if § 8-118.1 of the ordinances were held applicable to the petitioner's proposed facility the legislative purpose and policy as expressed in G. L. c. 40A, § 10, and in c. 164, § 105A *(Pereira* v. *New England LNG Co. Inc., supra,* at 120-122), would not be accomplished. *Del Duca* v. *Town Admr. of Methuen, ante,* 1, 10-12 (1975).

We therefore hold that the Department's approval of the proposed gas facility under the provisions of G. L. c. 164, § 105A, controls and prevails, notwithstanding the city's attempted regulation of the facility by § 8-118.1 of its ordinances, and that the petitioner is entitled to a building permit to construct and operate the facility as approved by the Department.

We do not reach the petitioner's further contention that § 8-118.1 of the ordinances and the denial by reason thereof of the requested building permit constitute an unreasonable burden on interstate commerce in violation of the Constitution of the United States.

It is hereby ordered that the clerk of this court for Suffolk County enter judgment in this action ordering the

respondent building inspector of the city of Fall River to issue forthwith the building permit requested by the petitioner in an application filed on or about February 21, 1974, describing the proposed construction as follows: "Construction of an Energy Center and Associated facilities in accordance with the Commonwealth of Massachusetts Department of Public Utilities Order 17090 of 12/15/71."

*So ordered.*