# V.S.H. REALTY, INC. & another[1] *vs.* LICENSE BOARD OF WORCESTER.

Worcester. December 16, 1981. — May 27, 1982.

Present: ARMSTRONG, ROSE, & SMITH, JJ.

*Gasoline Stations,* Self-service. *Fire Prevention.*

A local license board acted neither arbitrarily nor capriciously in denying the plaintiffs' applications to amend licenses they held for the operation of gasoline stations to allow their stations to be converted to self-service facilities in combination with convenience food stores with only one attendant for both operations where the board took into account the specific type of operation contemplated, in light of a regulation of the Board of Fire Prevention requiring that the control console of a self-service station be monitored at all times while gasoline is being dispensed. [587-588]

A State fire marshal's approval, pursuant to 527 Code Mass. Regs. § 5.04 (16) (1979), of plans for the operation of self-service gasoline stations in combination with convenience food stores did not preclude a local license board's decision, in accordance with the power granted to local authorities by G. L. c. 148, § 13, denying the plaintiff's application to amend licenses they held for the operation of gasoline stations to allow the self-service facilities. [588-589]

CIVIL ACTION commenced in the Superior Court Department on December 11, 1979.

The case was heard by *Travers,* J.

*Allan van Gestel* for the plaintiffs.

*James F. Bergin,* Assistant City Solicitor, for the defendant.

ROSE, J. On appeal from a judgment of the Superior Court upholding a decision of the license board of the city of Worcester (board), the plaintiffs contend that the board's

---

[1] Commonwealth Dairy Stores, Inc. The complaint states that the plaintiffs are doing business as Cumberland Farms.

decision was arbitrary and capricious and that the lower court was in error in not so ruling. In accordance with the power granted to local authorities by G. L. c. 148, § 13, the board denied the plaintiffs' applications to amend licenses they held for the operation of gasoline stations. Earlier the State Fire Marshal (Marshal) had approved the plans for the facilities pursuant to 527 Code Mass. Regs. § 5.04(16) (1979). The amended licenses would have permitted the plaintiffs to convert their stations to self-service facilities in combination with convenience food stores with only one attendant for both operations.

The plaintiffs' assertion that the board acted arbitrarily and capriciously is not supported by the record. It is quite apparent from the board's letter to the plaintiffs denying the applications that the board took into account the specific type of operation contemplated, in light of a regulation of the Board of Fire Prevention requiring that the control console of a self-service station be monitored at all times while gasoline is being dispensed. 527 Code Mass. Regs. § 5.04 (16) (d) (1979). Considering the plaintiffs' plan to have only one person selling the food and monitoring the console at any one time, the board could reasonably have found that the console might not be monitored at the times required by the regulation. As a general rule, we should "be slow to decide that a public board has acted unreasonably or arbitrarily" (*Cotter* v. *Chelsea*, 329 Mass. 314, 318 [1952]), particularly where, as here, its decision was based, at least in part, on the applicable regulation. See *Cliff* v. *Board of Health of Amesbury*, 343 Mass. 58, 62 (1961); *School Comm. of Boston* v. *Board of Educ.*, 364 Mass. 199, 203 (1973).

The plaintiffs' contention that the local fire chief, a member of the board, has no power to deny such applications is irrelevant, for that is not what ultimately occurred here. Apparently the plaintiffs have misconstrued the relationship between the board and the fire chief. To be sure, the latter has the initial authority to approve or disapprove such plans under G. L. c. 148, § 13, but his approval or disapproval

is only advisory in nature and not binding on the board. The final decision to grant or deny a license lies within the discretion of the board alone under G. L. c. 148, § 13, and it was the board that made the decision in this case.

The only real question here concerns the extent of the authority of the Marshal to approve or disapprove self-service gasoline stations. The Board of Fire Prevention regulation relating to such stations, 527 Code Mass. Regs. § 5.04(16), states that self-service gasoline facilities "shall be permitted" provided that the applicant "has submitted complete plans and specifications of the proposed installation to the [State Fire] Marshal . . . and has obtained approval of said plans." The plaintiffs assert that this regulation gives complete authority to the Marshal to approve or disapprove such facilities.

The trial judge found that "the reviews . . . conducted by the . . . Marshal and that conducted by the licensing board fulfill separate and distinct functions . . . . [W]hile the . . . Marshal may make a decision on the basis of plans submitted to him, he is not in a position to make an informed decision with respect to the broader questions of how the public safety of the particular community is affected by the proposal . . . . Case law has traditionally accorded broad powers to licensing boards in fulfilling this function." The judge's rulings in respect to these distinct functions are supported by case law. There is no doubt that a local board may consider and decide the broad questions of how a proposed facility will affect its particular community. *E.A.D. Realty Corp.* v. *Selectmen of Shrewsbury*, 6 Mass. App. Ct. 826, 827 (1978), and cases cited. Additionally, while within metropolitan Boston the Marshal is allowed the same scope of inquiry as local licensing authorities have outside the district (*St. James Bldg. Corp.* v. *Commissioner of Pub. Safety*, 260 Mass. 548, 555 [1927]), outside the metropolitan fire district the Marshal acts only as "an administrative officer to pass upon technical compliance with law and . . . regulations." *Rawding* v. *State Fire Marshal*, 272 Mass. 307, 310 (1930). *Leach* v. *State Fire Marshal*, 278 Mass. 159, 164-165 (1932).

Here, neither the regulation in question, nor the statute authorizing it (G. L. c. 148, § 9), is "so broadly encompassing" that it can be interpreted as a preemption of the area by the State. *Milton* v. *Attorney Gen.,* 372 Mass. 694, 696 (1977). Contrast *Pereira* v. *New England LNG Co.,* 364 Mass. 109 (1973) (holding that G. L. c. 148, § 13 [as amended through St. 1959, c. 353, § 1], under which municipal authorities had purported to license gas storage facilities had been superseded by G. L. c. 164, § 105A, specifically granting such powers to the Department of Public Utilities). In addition, the State purpose in passing the regulation is "to assure the safety of self-service gas stations, if there are any, rather than to encourage the opening of such stations." *Milton* v. *Attorney Gen.,* 372 Mass. at 696. Thus, there is no conflict between the Marshal's initial approval of plans and specifications, and the ultimate denial of the license by the municipal board which may take broad local concerns into consideration as well as the mere plans for the physical facility. *E.A.D. Realty Corp.* v. *Selectmen of Shrewsbury,* 6 Mass. App. Ct. at 827. See *Scudder* v. *Selectmen of Sandwich,* 309 Mass. 373 (1941). Indeed, such an interpretation comports with the pattern established by the Legislature "authorizing the State fire marshal to make regulations for the storage of specified explosive or inflammable substances and of authorizing the municipal authorities to license premises to be used for the keeping, storage, manufacture or sale of such substances." *Pereira* v. *New England LNG Co.,* 364 Mass. at 116.

There is no indication in this case that the Marshal had before him the provision that only one operator would be employed in each facility; his letters approving the plot plans specified that the facilities would have to adhere to 527 Code Mass. Regs. § 5.04(16)(d). Therefore, since the license board's decision did not contradict the Marshal's approval of the plot plans but rather took additional specific factors into account, we conclude that there was no error in upholding the board's decision.

*Judgment affirmed.*